## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

HEATHER MAUR, on behalf of
herself and all others similarly situated,

       Plaintiff,

         v.

MONAT GLOBAL CORP. and
ALCORA CORPORATION a/k/a
ALCORA GROUP,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff Heather Maur, individually, and on behalf of all others similarly situated, by and through counsel, brings this action against Monat Global Corporation and Alcora Corporation (a/k/a Alcora Group) ("Defendants"). Plaintiff's allegations herein are based upon personal knowledge and belief as to her own acts and upon the investigation of her counsel and information and belief as to all other matters.

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of herself and a class of similarly situated users and purchasers of hair products developed, marketed and/or sold by Defendants. Plaintiff and other members of the Class purchased hair care products that were advertised to promote hair stability and growth, but instead provided no such benefit, and in fact caused significant hair loss to Plaintiff and members of the putative Class.

2.      As described in more detail below, Plaintiff experienced severe hair thinning and hair loss after using Defendants' products.

3.      According to Monat's website, it uses a "direct sales/social marketing model of business" to "bypass[ ] traditional retail channels in favor of a person-to-person focus."[1] Monat's "Market Partners" promote and sell Monat's hair care products, frequently to family and friends, and actively recruit additional Market Partners into the company as a type of "pyramid scheme."

4.      Monat's motto is: "MONAT starts with changing your hair and eventually changes your life. We offer a generous compensation plan, an exceptionally nurturing support system, and caring, committed leaders who treat you like family."[2]

5.      In particular, Monat markets its products as causing consumers to have "visibly longer, fuller, stronger, younger-looking hair."[3]

6.      Instead of making consumers' hair longer, fuller and stronger, Monat's products are improperly formulated, do not work as advertised, and actually cause consumers to lose their hair, as it did for Plaintiff ("the Hair Care Product Defect").

7.      Defendants have long been aware of the defective nature of their hair care products yet they have chosen to conceal it from consumers at the time of purchase and thereafter, including when consumers contact them complaining of thinning hair and hair loss.

8.      As a result of Defendants' unfair, deceptive, and/or fraudulent business practices, Plaintiff and the putative Class have suffered an ascertainable loss of money. The unfair and deceptive trade practices committed by Defendants were conducted in a manner giving rise to substantial aggravating circumstances.

9.      Had Plaintiff and other Class members known about the defective nature of Defendants' products, they would not have purchased them, or would have paid substantially less for them.

---

[1] https://monatglobal.com/the-monat-opportunity/ (last visited April 26, 2018).
[2] https://monatglobal.com/history/ (last visited April 26, 2018).
[3] https://monatglobal.com/results-2/ (last visited April2 26, 2018).

10.     As a result of the defective nature of Defendants' hair care products, Plaintiff and the Class members have suffered injury in fact, incurred damages, and otherwise have been harmed by Defendants' conduct.

11.     Accordingly, Plaintiff brings this action to redress Defendants' violations of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201 *et seq.*); the Florida False Advertising Statute (Fla. Stat. § 817.841); the Ohio Consumer Sales Practices Act (Ohio Rev. Code §§ 1345.01 *et seq.*); the Ohio Deceptive Trade Practices Act (Ohio Rev. Code. Ch. 4165); and the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301, *et seq.*), as well as fraud, negligent misrepresentation and unjust enrichment claims.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative class members defined below; and there are numerous members of the proposed class, including Plaintiff – an Ohio resident -- who are citizens of a state different from Defendants – both Florida corporations.

13.     This Court has personal jurisdiction over Defendants because their corporate headquarters are located in this district, because they conduct substantial business in the District, and because a substantial part of the acts and omissions complained of occurred in the District. The Court has personal jurisdiction of Defendants because it is authorized to do business in this District and because a substantial part of the acts and omissions complained of occurred in the District.

14.     Venue as to both Defendants is proper in this judicial district under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District. Both Defendants have their principal place of business in this District, are authorized to conduct

business in this District, have intentionally availed themselves of the laws and markets within this District, do substantial business in this District, and are subject to personal jurisdiction in this District.

## THE PARTIES

### Plaintiff

15.     Plaintiff Heather Maur is a resident of Ohio.

16.     Over the course of approximately 11 months beginning around early 2017, Plaintiff Maur purchased and began using at least ten different containers of Defendants' products to enhance the appearance and health of her hair.

17.     Instead of improving Plaintiff's hair, Defendants' hair care products actually severely damaged it. After approximately five months Plaintiff began using Defendants' products, her hair became damage and resulted in a "mullet" look where most of the strands closest to her face, which had previously been longer than shoulder-length, were broken off leaving them about one-inch in length.

18.     The Monat products also damaged Plaintiff's hair by thinning such that portions of her scalp were visible where they had not previously been, with complete hair loss to the follicle.

19.     In Approximately April of 2018, Plaintiff discontinued using Defendants' hair care products; however, she has still not had any new growth where her hair had thinned and continues to experience breakage when brushing her hair.

20.     The problems that Plaintiff has experienced with her hair due to the Hair Care Product Defect have resulted in her having to avoid heat products, take additional vitamin supplements, refrain from getting her hair colored, and required her to purchase expensive treatments to attempt to undo the severe damage caused by Defendants' products.

**Defendants**

21.     Defendant Alcora Corporation a/k/a Alcora Group ("Alcora") is a corporation formed under the laws of Florida with a principal place of business located in Miami, Florida. Alcora was originally formed in approximately 2001 under the name Excelencia Corporation but changed its name to Alcora in 2014.

22.     In or about 2014, Alcora created Defendant Monat Global Corp. ("Monat") "to enter the multi-billion dollar hair care market and provide[ ] ground-breaking opportunities through a novel Social Marketing approach to Direct Sales."[4]

23.     Defendant Monat is a corporation formed under the laws of Florida with a principal place of business also located in Miami, Florida.

24.     Monat Global Corp. is a wholly-owned subsidiary of Alcora Corp.[5]

**FACTUAL ALLEGATIONS**

**A.     Defendants' Defective Hair Products**

25.     Defendants design, develop, market, and sell a wide variety of hair care products exclusively through direct sales and social marketing"

26.     Defendants market their hair care products as a way for people to "enjoy beautiful, healthy, fulfilling lives through our exceptional, naturally based products," and as "a global leader in naturally based, anti-aging innovation."[6]

27.     Further, Defendants tout the scientific basis for their hair care products as making them "naturally-based, safe, pure and sustainable," with compounds such as "REJUVENIQUE™ Oil Intensive ("A blend of 13+ Natural Plant and Essential Oils rich in omega fatty acids,

---

[4] http://www.alcoracorp.com/monat/; https://monatglobal.com/algora/ (both last visited April 26, 2018).
[5] https://monatglobal.com/algora/ (last visited April 26, 2018).
[6] https://monatglobal.com/history/ (last visited April 26, 2018).

antioxidants and nutrients highly compatible with the skin and hair"), CAPIXYL$^{TM}$ (An emollient blend that helps to protect the scalp, strengthen and thicken hair while supporting natural growth"), and PROCATALINE$^{TM}$ (Featuring Pea Extract, this natural blend of antioxidants helps protect and promote healthier hair follicles to combat premature thinning while protecting color and shine.").[7]

28.     Despite Defendants' claims, their hair care products are improperly formulated and defective and cause consumers to lose hair and/or experience thinning hair when using the products.

### B.     Defendants' Knowledge of the Defect

29.     Defendants have actual knowledge of the Hair Care Product Defect because online reports of it are widespread.  For instance, Defendant Monat has a D- rating on the Better Business Bureau ("BBB"). A sampling of complaints posted to the BBB website, and to which Monat has responded, includes:

> **Consumer No. 1:**
> I experienced extreme hair loss and breakage by using Monat. They will also not provide a refund after providing this information.
>
> I joined the Monat VIP program in November 2017 (VIP Customer Registration, Rejuvabeads, Revive Shampoo, Intense Repair ConditionerOrder #XXXXXXX $158.88). Used the products through January 2018. I used the product to encourage hair growth (no previous issues existed with my hair, I just wanted it to grow faster). I have always used salon quality, sulfate/sulfite free products. Once I started using Monat, my hair started to become brittle and falling out in handfuls. I was told this was the 1-month "detox" period. After one month of use, my hair continued to fall out at the same rate as well as continued to break off daily. I decided to stop use a month after receiving/using my January order (Revive Shampoo, Intense Repair Conditioner, and Rejuvenique OilOrder #XXXXXXX $157.84) because I had experienced zero improvement. Since

---

[7] https://monatglobal.com/the-science-of-monat/ (last visited April 26, 2018).

going back to my old AG shampoo/conditioner, my hair loss has slowed considerably and feels much healthierproving it was Monat that caused the issues.[8]

**Consumer No. 2:**
Cannot reach customer service in order to obtain full refund and cancel future shipment. No one ever answers or responds to emails.
After using this product for 3 weeks my hair began breaking and falling out. The reason I began using the product is it touts hair growth and I ended up having to have over 3 inches cut off because of breakage from using this product.[9]

**Consumer No. 3:**
Did not work for my hair and had ill affects

Suffering from thinning hair I thought this would be the answer to my problems. I don't have tons of money but thought that if it worked it would be worth it. Well it did not and was not worth it. Naturally after the 60 day mark to return I started having issues. Issues that led me to a dermatologist. My hair was getting worse, completely dry and failing out. I kept hearing that it was all detox. The dermatologist laughed. She advised me to stop using it and got me on a doctor prescribed plan. The worse part was during the time I had some very odd hormonal changes and breast pain. Sure it could be a slew if things but odd that it happened during my use and subsided after I stopped using the product. Come to find out the red clover has things in it that your body converts to phytoestrogens. It's taken me about 8 months getting my hair back on track after this fiasco.[10]

30.     Below is a small smaple of other complaints posted to other websites regarding

Defendants' products:

**Consumer No. 4:**
I tried the revive shampoo by monat. It burned my scalp, fried my hair, dulled it's colour and I have a small bald spot! I have an apt with a dermontologist bcz bc I'm concerned It may be a chemical burn. Buyer beawre! This product is full of chemicals, dangerous and ruins people's hair![11]

**Consumer No. 5:**
I had used the product about a month when my normally healthy hair started breaking off. I spoke with the person I ordered from and was told it was just the transitional phase and it would get better. It didn't. I called about returning the products and was treated like I

---

[8] Posted on April 16, 2018 at https://www.bbb.org/south-east-florida/business-reviews/hair-products/monat-global-in-doral-fl-90137286/reviews-and-complaints?section=complaints (last visited April 26, 2018).
[9] Posted at *id.* on April 13, 2018.
[10] Posted at *id.* on April 24, 2018.
[11] Posted by J H at https://www.trustpilot.com/review/monatglobal.com?languages=en on April 26, 2018 (last visited April 26, 2018).

was stupid. In order to get a refund I have to pay to ship it back. Crappy product with even worse customer service.[12]

**Consumer No. 6:**
**Beware of scam. You will lose your hair!!** I used the product for about 3 months. Experienced significant hair loss and build up on my scalp. I have yet to figure out how to cancel. This product is harmful and this is not a reputable company. Do not under any circumstance use this product. Do not ever order from them. They are deceptive and hold you hostage. Check out the BBB reports also. What a nightmare![13]

31.     Upon information and belief, Defendants, through (1) their own records of customers' complaints, (2) their own pre-release development and testing, (3) refund claims, and (4) other various sources, were well aware of the Hair Care Product Defect but failed to notify consumers of the nature and extent of the problems with the products or to provide any adequate remedy.

32.     In many instances, consumers have incurred and will continue to incur expenses for the diagnosis and treatment of injuries sustained as a result of the Hair Care Product Defect.

33.     Consumers were without access to the information concealed by Defendants as described herein, and therefore reasonably relied on Defendants' representations and warranties regarding the quality and other material characteristics of Defendants' hair care products. Had consumers known of the Hair Care Product Defect, they would have paid less for the products than the amounts they actually paid, or would not have purchased the products at all.

## APPLICATION OF FLORIDA LAW

34.     Florida's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. Florida has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure that the choice of Florida state law is not arbitrary or unfair.   Specifically, Defendants have advertised and sold

---

[12] Posted by April Abplanalp Richards at *id.* on April 22, 2018.
[13] Posted by LeeAnn at *id.* on April 20, 2018.

8

their hair care products in Florida, and upon information and belief, the conduct that gave rise to Class members' claims emanated from Florida.

35.     According to Monat's website, Florida law applies to all claims.[14] Further, Florida is where both Defendants are incorporated and conduct their business activities, and also the location where a number of the Class members who purchased Defendants' hair care products reside and were injured. Defendants also actively advertise and market their hair care products in the Florida market.

## TOLLING OF STATUTES OF LIMITATIONS

36.     Any applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein.  Plaintiff and the members of the Class could not have reasonably discovered the true, latent nature of the Hair Care Product Defect until shortly before this class action litigation was commenced.

37.     Defendants were and remain under a continuing duty to disclose to Plaintiff and the members of the Class the true character, quality and nature of their hair care products and that the Hair Care Product Defect will cause consumers' hair to fall out and/or thin, resulting in them sustaining injuries and having to make out-of-pocket expenditures to seek remedial treatments. As a result of Defendants' active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this suit as a class action on behalf of herself and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class consists of the following:

**National Class:**

---

[14] https://monatglobal.com/wp-content/uploads/2017/06/Monat_Policies_and_Procedures_USA_062017-1.pdf at Para. 8.5 (last visited April 26, 2018).

9

All purchasers of Monat hair care products in the United States.

Or, in the alternative,

**Ohio Class:**

All purchasers of Monat hair care products residing in Ohio.

39.     Together, the Nationwide Class and the Ohio Class will be referred to collectively as the "Class." Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Defendants' hair care for purposes of resale (including but not limited to "Market Partners"), and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change or expand the Class definition after conducting discovery.

40.     *Numerosity:* Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members remains unknown at this time, upon information and belief, there are thousands of putative Class members throughout the United States who are generally ascertainable by appropriate discovery.

41.     ***Commonality*:** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a.   Whether the Defendants' hair care products suffer from the Hair Care Product Defect;

    b.   Whether Defendants engaged in the conduct alleged herein;

    c.   Whether Defendants designed, manufactured, marketed, distributed, sold or otherwise placed their hair care products into the stream of commerce in the United States knowing that the products suffered from the Hair Care Product Defect;

    d.   When Defendants first learned of the existence of the Hair Care Product Defect;

e.   Whether Defendants intentionally concealed from consumers the Hair Care Product Defect in their hair care products;

f.   Whether Defendants violated the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201 *et seq.)* through the conduct described herein;

g.   Whether Defendants violated the Florida False Advertising Statute (Fla. Stat. § 817.841) through the conduct described herein;

h.   Whether Defendants violated the Ohio Consumer Sales Practices Act (Ohio Rev. Code §§ 1345.01 *et seq.*) through the conduct described herein;

i.   Whether Defendants violated the Ohio Deceptive Trade Practices Act (Ohio Rev. Code. Ch. 4165) through the conduct described herein;

j.   Whether Defendants breached the written warranty under the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301, *et seq.*);

k.   whether Defendants' conduct resulted in unlawful common law fraud;

l.   whether Defendants' conduct resulted in unlawful negligent misrepresentation;

m.  Whether Defendants were unjustly enriched by their deceptive practices;

n.   whether Plaintiff and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief;

o.   Whether the Court should apply the law of Florida to the entire Class because Defendants are located in Florida and have indicated that Florida is their choice of law; and

p.   Whether Defendant Monat and Defendant Alcora are jointly and severally liable for the violations alleged herein.

42.     *Typicality*: Plaintiff's claims are typical of those of the other Class members because, *inter alia*, all members of the Class were injured through the common misconduct described above and were subject to Defendants' unfair and unlawful conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

43.     *Adequacy of Representation:* Plaintiff will fairly and adequately represent and protect the interests of the Class in that he has no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. The damages suffered by Plaintiff is typical of other Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

44.     *Superiority:*   A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendants' records and databases.

45.     Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

## COUNT I
## VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES
### (Fla. Stat. §§ 501.201 *et seq.*)
### (On Behalf of the Nationwide Class or, Alternatively, the Florida Class)

46.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

47.     The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . . "  Fla. Stat. § 501.204.

48.     Defendants have engaged in unfair competition and unfair or deceptive business practices by the conduct described above, and by knowingly and intentionally concealing from Plaintiff and Class members the existence of the Hair Care Product Defect. Defendants should have disclosed this information because they were in a superior position to know the true facts related to the quality of their hair care products,  and Plaintiff and Class members could not reasonably be expected to learn or discover this defect on their own until it manifested itself in their own hair upon use.

49.     These unfair methods of competition and unfair and deceptive acts have caused injuries to Plaintiff and members of the Class.

## COUNT II
## FLORIDA FALSE ADVERTISING STATUTE
### (Fla. Stat. § 817.841)
### (On Behalf of the Nationwide Class or, Alternatively, the Florida Class)

50.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

51.     The Florida False Advertising Statute makes it unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such marketing or dissemination of misleading advertising shall

constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses." Fla. Stat. § 817.41(1).

52. Defendants have engaged in unfair competition and unfair or deceptive business practices by the conduct described above, and by knowingly and intentionally concealing from Plaintiff and Class members the existence of the Hair Care Product Defect. Defendants should have disclosed this information because they were in a superior position to know the true facts related to the quality of their hair care products, and Plaintiff and Class members could not reasonably be expected to learn or discover this defect on their own until they began using the products and experienced damage and/or thinning to their own hair.

53. These unfair methods of competition and unfair and deceptive acts have caused injuries to Plaintiff and members of the Class.

## COUNT III
## VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT
### (Ohio Rev. Code §§ 1345.01 *et seq.*)
### (On Behalf of the Nationwide Class, or, Alternatively, the Ohio Class)

54. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

55. Plaintiff and the Class members are "consumers" within the meaning of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code Ann. § 1345.01(D).

56. Defendants are "suppliers" as defined by Ohio Revised Code §1345.01(C).

57. Defendants' conduct described herein involves "consumer transactions" as defined in Ohio Revised Code § 1345.01(A).

58. Defendants have engaged in unfair and deceptive trade practices in connection with a consumer transaction, including representing that their hair care products have characteristics, uses, benefits, and qualities which they do not have; representing that the hair care products are of a

particular standard and quality when they are not; advertising hair care products with the intent to not sell them as advertised; and otherwise engaging in conduct likely to deceive.

59.     Defendants' misrepresentations and false, deceptive, and misleading statements with respect to their hair care, as described above, constitute deceptive acts or practices.

60.     As a result of their misrepresentations and false, deceptive, and misleading statements with respect to their hair care products, as described above, Defendants have violated the Ohio Revised Code §1345.02.

59.     Defendants' false, unfair, deceptive, and unconscionable acts have previously been declared to be false, unfair, deceptive, or unconscionable by the Ohio Attorney General, who has made the following materials, among  others, publicly available for inspection, which materials declare actions similar to Defendants' to be unfair, deceptive, and unconscionable:

- *In the matter of Gateway Distributors, Ltd.,* June 14, 2006, Attorney General Public Inspection File Number 10002461 (company "shall not make any express or implied statements in the offer or sale of [its] products that have capacity, tendency or effect of deceiving or misleading consumers or that fail to state any material fact, the omission of which deceives or tends to deceive consumers).

- *In re MillerCoors*, December 23, 2008, Attorney General Public Inspection File Number 10002740 (company agrees to stop manufacturing, marketing, and providing unsafe product until product is reformulated);

- *Ohio v Purdue Pharma, Inc.,* May 08, 2007, Franklin County Case Number 07-CVH-05-6195, Attorney General Public Inspection File Number 10002558 (company prohibited from making misleading statements regarding the use of its product);

- *Ohio v. The Dannon Co., Inc.,* December 22, 2010, Franklin County Case Number 10-CVH-12-18225, Attorney General Public Inspection File number 10002917 (along with $21 million payment, company enjoined from making any express or implied claims about certain characteristics of its product)

- *Ohio v. GlaxoSmithKline, LLC*, June 23, 2011, Lucas County Case Number CI-2011-3928, Attorney General Public Inspection File Number 10002956 (along with paying $40.75 million, company shall not make any writer or oral claim for the products that is false, misleading or deceptive or represent that the products have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities, or qualities that products do not

15

have, or cause likelihood or confusion or misunderstanding as to products' source, sponsorship, or certification);

- *In re Warner-Lambert Company, LLC*, May 13, 2014, Attorney General Public Inspection File Number 10002243 (company agrees, inter alia, not to make false, misleading, or deceptive oral or written claims about its product)

60. It is also a deceptive act or practice for purposes of the CSPA if a supplier makes representations, claims, or assertions of fact in the absence of a reasonable basis in fact, as Ohio Admin. Code § 109:4-3-10(A) specifically proscribes such statements:

> Make any representations, claims or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims or assertions of fact.

61. As a direct and proximate result of Defendants' violation of Ohio Revised Code § 1345.02, Plaintiff and the Class Members have suffered actual damages, the full amount of which will be proven at trial.

62. Pursuant to Ohio Revised Code §1345.09(A) and Fed. R. Civ. P. 23, the Ohio Plaintiff and Ohio Class Members are entitled to rescind the consumer transactions or recover actual damages, plus an amount not exceeding $5,000 in non-economic damages.

63. Pursuant to Ohio Revised Code §1345.09(E), the Ohio Plaintiff and Ohio Class Members seek an order enjoining the above-described wrongful acts and practices of the Defendant and for restitution and disgorgement.

64. Pursuant to Ohio Revised Code §1345.09(F), Plaintiffs, individually and on behalf of the other Class members, seek damages and attorneys' fees and cost.

65. Pursuant to Section 1345.09(E), this Complaint will be served upon the Ohio Attorney General.

16

## COUNT IV
## VIOLATIONS OF THE OHIO DECEPTIVE TRADE PRACTICES ACT
### (Ohio Rev. Code. Ch. 4165)
### (On Behalf of the Nationwide Class, or, Alternatively, the Ohio Class)

66.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

67.     Defendants are "persons" as defined in Ohio Revised Code § 4165.01(D).

68.     In violation of Ohio Rev. Code § 4165.02(A), Defendants have engaged in a deceptive trade practice by using deceptive representations in connection with goods; representing that goods have sponsorship, approval, characteristics, uses, or  that they do not have; represent that goods are of a particular standard, quality, or grade when they are of another; and advertise goods with intent not to sell them as advertised.

69.     As a result of their deceptive trade practices with their hair care products, Defendants have violated the Ohio Revised Code § 4165.02(A).

70.     Defendants' violations of Ohio's Deceptive Trade Practices Act have caused the Plaintiff and Class Members actual damages.

71.     Plaintiff and the Class seek actual damages and/or equitable relief, attorneys' fees and costs, and to enjoin Defendants on the terms that the Court considers reasonable.

## COUNT V
## BREACH OF WRITTEN WARRANTY
## UNDER THE MAGNUSON-MOSS WARRANTY ACT
### (On Behalf of the Nationwide Class, or Alternatively, the Florida and/ Ohio Class[es])

72.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

73.     Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, in response to widespread consumer complaints regarding misleading and deceptive warranties. The Act

17

imposes civil liability on any "warrantor" for failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

74.    Plaintiff and the Class members are "consumers" as defined by 15 U.S.C. § 2301(3).

75.    Defendants' hair care products are consumer products as defined by 15 U.S.C. § 2301(1).

76.    Defendants are warrantors and suppliers as defined by 15 U.S.C. § 2301(4) and (5).

77.    Defendants have failed to remedy the Hair Care Product Defect, despite their knowledge and notice of said defect in their hair care products.

78.    Defendants' warranties[15] are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

79.    Defendants breached the express warranties by refusing and/or failing to honor the express warranties by offering hair care products that were free from the Hair Care Product Defect and/or resolving hair damage and/or thinning hair when such injuries manifested themselves to consumers.

80.    Plaintiff and the other Class members relied on the existence and length of the express warranties in deciding whether to purchase Defendants' hair care products.

81.    Defendant's breach of the express warranties has deprived Plaintiff and the other Class members of the benefit of their bargain.

82.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

**COUNT V**
**COMMON LAW FRAUD**
**(On Behalf of the Nationwide Class, or Alternatively, the Florida and/ Ohio Class[es])**

---

[15] *See, e.g.,* http://monatglobal.com/wp-content/uploads/2016/04/VIPProgram_FAQ_3-16.pdf (last visited April 26, 2018 *("*All MONAT products ALWAYS include a 30-day money-back guarantee.").

83.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

84.     Defendants made material misstatements of fact to Plaintiff and Class members regarding the non-defective nature of their hair care products. As a result, Plaintiff and the Class were fraudulently induced to purchase the hair care products.

85.     These misstatements made by Defendants were made with knowledge of their falsity, and with the intent that Plaintiff and members of the Class would rely upon them.

86.     At the time that Defendants made these misrepresentations and concealments, and at the time that Plaintiff and Class members purchased the hair care products, Plaintiff and the Class were unaware of the falsity of these misrepresentations, and reasonably believed them to be true.

87.     In making these representations, Defendants knew they were false and intended that the Plaintiff and Class members would rely upon such misrepresentations.

88.     Plaintiff and Class members did in fact rely upon Defendants' misrepresentations concerning the non-defective nature of their hair care products.

89.     As a direct and proximate result of Defendants' deceptive, fraudulent, and unfair practices, Plaintiff and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

90.     Plaintiffs, on behalf of themselves and all others similarly situated, demands judgment against Defendants for damages and declaratory relief.

## COUNT VI
## NEGLIGENT MISREPRESENTATION
**(On Behalf of the Nationwide Class, or Alternatively, the Florida and/ Ohio Class[es])**

91.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

92.     Under the circumstances alleged, Defendants owed a duty to Plaintiff and the Class to provide them with nondefective hair care products.

93.     Defendants represented to Plaintiff and Class members that by purchasing their hair care products, they would be enjoying beneficial products for their hair, which is not what they actually received; in fact, Defendants' hair care products damaged and/or thinned Plaintiff and Class members' hair.

94.     Defendants' representations, as described herein, were false, negligent and material.

95.     Defendants negligently made these misrepresentations with the understanding that Plaintiff and Class members would rely upon them.

96.     Plaintiff and Class members did in fact reasonably rely upon these misrepresentations and concealments made by Defendants.

97.     As a direct and proximate result of Defendants' negligent actions, Plaintiff and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

98.     Plaintiff, on behalf of themselves and all others similarly situated, demands judgment against Defendants for damages and declaratory relief.

**COUNT VII**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class or, Alternatively, the Florida and/or Ohio Class[es])**

99.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

100.    Plaintiff and the Class members conferred a benefit on Defendants by purchasing the Defendants' hair care products.

101.    Defendants had knowledge that this benefit was conferred upon them.

20

102.   Because of their wrongful acts and omissions, Defendants charged a higher price for the hair care products than the products' true value and Defendants obtained money which rightfully belongs to Plaintiff and the Class members.

103.   Defendants have been unjustly enriched at the expense of Plaintiff and the Class and their retention of this benefit under the circumstances would be inequitable.

104.   Plaintiff seeks an order requiring Defendants to make restitution to her and the other members of the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of herself and members of the various Classes, respectfully requests that this Court:

a.      determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

b.      appoint Plaintiff as the representative of the Class[es] and her counsel as Class counsel;

c.      award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiff and the Class members are entitled;

d.      award pre-judgment and post-judgment interest on such monetary relief;

e.      grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to provide replacement hair care products and/or to treat Plaintiff and the Class members' hair loss and/or or hair thinning to remedy such injuries;

f.      provide Plaintiff and Class members with appropriate curative notice regarding the existence and cause of the Hair Care Product Defect;

g.  award reasonable attorneys' fees and costs; and

h.  grant such further relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial of their claims by jury to the extent authorized by law.

Respectfully submitted this 14th day of May, 2018.

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**

/s/ John A. Yanchunis
**JOHN A. YANCHUNIS,** FBN: 0324681
jyanchunis@forthepeople.com
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505 Telephone
(813) 223-5402 Facsimile


**JOSEPH G. SAUDER**
*To Apply Pro Hac Vice*
jgs@sstriallawyers.com
**SAUDER SCHELKOPF, LLC**
555 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0580

*Attorneys for Plaintiff and the Putative Class*

22